CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 28 2021

JULIA C. DUDLEY, CLERK
BY:  s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| GRAPHIC COMMUNICATIONS CONFERENCE INTERNATIONAL BROTHERHOOD OF TEAMSTERS NATIONAL PENSION FUND, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:21cv00009 |
| v. | ) ) | **MEMORANDUM OPINION** |
| SANDRA FAULK ROLLINS, | ) ) | By:   Hon. Thomas T. Cullen |
| Defendant. | ) | United States District Judge |

Following her husband's death, Defendant Sandra D. Rollins ("Rollins")[1] received a check from Plaintiff Graphic Communications Conference International Brotherhood of Teamsters National Pension Fund ("the Fund") for $26,511.50.[2] At the time, a representative of the Fund told Rollins that the check was a one-time payment to correct an underpayment to her late husband's pension that had gone unnoticed while he was alive. Rollins eventually deposited the check, paid down some debt, and thought nothing more of it.

As explained in more detail below, a few weeks later, the Fund sent Rollins another check for $26,511.50. Although this check was not signed, Rollins took it to her bank, her

---

[1] Although she is sued as "Sandra Faulk Rollins," Defendant has signed her pleadings as "Sandra D. Rollins."

[2] The Fund and the co-chairmen of the Board of Trustees that manage the Fund—Kurt Freeman and Malcolm Pritzker—are the named plaintiffs in this action, and are collectively referred to herein as "Plaintiffs." (*See* Am. Compl. ¶¶ 5–6.) At oral argument, Plaintiffs Freeman and Pritzker conceded that they are "fiduciaries" entitled to bring suit under 29 U.S.C. § 1132(a)(2) (authorizing a civil action brought only "by the Secretary, or by a participant, beneficiary or fiduciary" for relief under 29 U.S.C. § 1109, breach of fiduciary duty). Neither the Fund nor the plan administrators are empowered to bring suit under § 1109. *See Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 987–88 (4th Cir. 1990) (holding that "§ 1132(a)(1)(B) does not provide a federal cause of action for plan administrators").

bank deposited it, and she used the money to pay down other debts. Although the Fund had previously represented that the first check was a one-time thing, when she received the second check, Rollins assumed the Fund owed her more money. As Rollins explained it in her Answer, "[P]eople make mistake[s] every day." (Ans. at 2 [ECF No. 17].)

Plaintiffs contend that the second check was sent in error. And it now claims that, in accepting the money she was not owed, Rollins became a fiduciary under the Employee Retirement Income Security Act ("ERISA") and is liable for the misappropriation of plan funds to pay her personal debts. They demand that Rollins repay the $26,511.55, pay pre- and post-judgment interest on the $26,511.50, and pay their attorneys' fees and related costs in prosecuting this action. (*See* Am. Compl. Prayer for Relief [ECF No. 8].) They move for judgment on the pleadings, contending that Rollins has admitted facts sufficient to establish her liability. (*See* ECF No. 19.) For the reasons discussed below, the court does not agree, and Plaintiffs' motion will be denied.

## I.   STATEMENT OF FACTS

Rollins's late husband, James Faulk ("James"), was a participant in the Fund. When he retired, he was married to Naomi Hodges Faulk ("Naomi"), who died on January 20, 2006. (Am. Compl. ¶ 13.) "As a result of [Naomi's] death, [James] was entitled to an increased monthly pension benefit for the remainder of his lifetime . . . ." (*Id.* ¶ 14.) Unfortunately, either through inadvertence or because he was not aware that he was entitled to more money, James never notified the Fund that Naomi had passed, and his monthly payments did not change. (*Id.* ¶ 15.)

After Naomi passed away, James married Rollins, and they remained married until 2020, when he passed away. When the Fund learned that James had died, it also apparently learned—for the first time—that Naomi had predeceased him. The Fund asked Rollins for both James's and Naomi's death certificates, which she provided. (*Id.* ¶ 17–18.) Because James had been entitled to a greater monthly payment after Naomi's death but had not received it, the Fund notified Rollins that it would pay James's estate "the amount owed to [James] as a result of him being predeceased by [Naomi] in the amount of $26,511.50." (*Id.* ¶ 18.) The Fund mailed Rollins a check made out to the "Estate of James Faulk c/o Sandra Faulk Rollins." (*Id.* ¶ 19.) When Rollins had difficulty depositing the check, she requested that the Fund resend it, omitting "Estate of" from the payee line. (*Id.* ¶ 20.) Rollins mailed the check back to the Fund and the Fund issued a new one ("the second check") made out to "James Faulk c/o Sandra Faulk Rollins," but Rollins's bank balked again "because [James's] name was first." (*Id.* ¶ 23.) Rollins mailed the second check back, but the Fund "declined to re-issue [the payment] because [James], and not Rollins . . . , [was] entitled to" payment. (*Id.* ¶ 25.) The Fund returned the second check to Rollins and, on July 20, 2020, Rollins was able to deposit it at a different branch. (*Id.* ¶ 26–27.)

Plaintiffs allege that on August 1, the Fund accidentally issued another check for $26,511.50 ("the third check") and mailed it to Rollins. (*Id.* ¶ 28.) Although the third check was not signed, Rollins cashed the check on August 17, 2020. (*Id.* ¶ 29–30.) To recover the $26,511.50 of Fund assets that Plaintiffs assert they incorrectly sent to Rollins, Plaintiffs filed suit in this court alleging three causes of action: breach of fiduciary duty under ERISA, *see* 29 U.S.C. § 1104(a); constructive trust; and unjust enrichment. Following some procedural

wrangling, Rollins filed an Answer to Plaintiff's Amended Complaint, and Plaintiffs moved for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). The court heard argument on the motion on August 19, 2021. After reviewing the submissions of the parties and the applicable law, this matter is ripe for disposition.

## II.   STANDARD OF REVIEW

Motions for judgment on the pleadings are reviewed under the same standard that is applied to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). The only difference is that, unlike a motion to dismiss, the court may consider a defendant's answer when ruling on a motion for judgment on the pleadings. *Jordan v. Caromont Health, Inc.*, No. 3:12cv798-GCM, 2013 WL 443777, at *2 (W.D.N.C. Feb. 5, 2013).

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.   DISCUSSION

Regarding its first cause of action, Plaintiffs argue that, because Rollins accepted Fund assets to which she was not entitled, she became a fiduciary under the terms of ERISA and thereby owed a fiduciary duty to the Fund and its participants. According to Plaintiffs, *any* person who accepts *any* Fund assets to which they are not entitled—regardless of whether they knew they were not entitled to the funds, knew that a mistake had been made, or even if they had been told *explicitly* by plan administrators that they *were* entitled to the funds and that *no mistake had been made*—is a fiduciary. And as a fiduciary, that party is personally liable to repay those funds if they are used in a manner that is contrary to the fund participants' interests. *See* 29 U.S.C. § 1109. Accordingly, Plaintiffs contend that Rollins conceded liability for their breach of fiduciary duty claim when she admitted in her Answer that: (1) she accepted the third check; (2) she knew she was not entitled to it; and (3) she spent the money. Those admissions, Plaintiffs argue, establish that Rollins was a fiduciary under ERISA, and thus that she is personally liable to repay the overpayment.

But Plaintiffs' argument is premised on one plausible interpretation of Rollins's admissions, as set forth in her Answer, not the *only* plausible interpretation. While it is true that Rollins admitted that a representative of the Fund had told her she would only receive one check, she also stated that, when she received the third check, she assumed that the Fund's prior, contradictory statement (that she would receive a single check) was wrong. In the light most favorable to Rollins, the nonmoving party, it is thus also plausible to read Rollins's admission of a mistake as a reference to the Fund's mistake in not paying her the full amount that she believed she was entitled to as a beneficiary. According to her Answer, Rollins also

assumed that, if the third check was a mistake, then the Fund would catch it and her bank would not deposit it. (Ans. at 2.) In sum, Plaintiffs' reading of Rollins's Answer glosses over *what* Rollins must have known the mistake to be. Rollins's admissions, contrary to Plaintiffs' arguments, do not conclusively establish this point in their favor, such that judgment on the pleadings is appropriate.

Plaintiffs counter that it does not matter if Rollins legitimately believed she was entitled to the money; once she accepted Fund assets, regardless of whether she—or even anyone— knew that she was not entitled to them, she became a fiduciary. At the hearing on this motion, Plaintiffs even posited that a person who was entitled to $100 a month but is *told* by fund administrators that she would receive $150 a month and thereafter receives a check for $150 is a fiduciary with regard to the $50 overpayment, and would be personally liable to repay that money to the fund if she spent it. The court is not yet persuaded, however, that an unknowing and unwitting fiduciary is liable under ERISA.

Although it is not binding in this Circuit, the Eleventh Circuit has recognized, "A person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of this status as a fiduciary . . . ." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003). The Middle District of Florida subsequently held that, "[b]efore fiduciary duty is imposed on an officer, he must have notice, either through clear contractual language or clear, shared intent of the parties." *Int'l Union of Painters & Allied Trades Dist. Council No. 78 Health & Welfare Fund v. Argyros*, No. 8:05-cv-1661-T-24TGW, 2007 WL 1577840, at *2 (M.D. Fla. May 31, 2007). The court finds this caselaw compelling and, at this preliminary stage, it is not

prepared to rule that, under the facts and admissions set forth in the pleadings, Rollins was unquestionably a fiduciary. *Accord Chao v. Rhodes*, No. 1:04cv00854, 2006 WL 51175, at *5 (M.D.N.C. Jan. 10, 2006) ("The Secretary relies on a technical reading of ERISA to impose personal liability on Walker for using borrowed funds to pay the Internal Revenue Service instead of funding the Plan . . . . The Court is not convinced at this stage that such a reading of the statute is appropriate under the circumstances."); *Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. Worlds Transp., Inc.*, 241 F. Supp. 2d 499, 506 (E.D. Penn. 2003) (refusing to impose personal liability on CEO where there was insufficient evidence that he exercised any discretionary control over plan assets or purposefully diverted fund contributions, in spite of evidence that he occasionally signed company checks and was minimally involved with the fund contribution procedure). For this reason, the court will deny judgment on the pleadings as to the breach-of-fiduciary-duty count.

Plaintiffs' second cause of action—constructive trust—"is a remedy, not an independent cause of action." *Darton Env't, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1027 n.2 (W.D. Va. 2018) (citing *Johnson v. D & D Home Loans Corp.*, No. 2:10cv204, 2007 WL 4355278, at *4 (E.D. Va. Dec. 6, 2007)). Accordingly, they are not entitled to judgment on that count.

Finally, although there is ample statutory recourse for the Fund and its trustees, federal law does recognize a cause of action for unjust enrichment under ERISA. *See, e.g.*, *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir. 1990). But although the remedy exists, it is used sparingly, and the remedy crafted must be "appropriate and necessary to effectuate the purposes of ERISA." *U.S. Steel Mining Co. v. District 17, United Mine Workers of Am.*, 897 F. 2d

149, 153 (4th Cir. 1990). Moreover, the equitable remedy must be appropriate "in the circumstances of the case." *Provident Life*, 906 F.2d at 994.

"[T]hree elements encompass the equitable remedy of unjust enrichment . . . : the plaintiff must show that (1) he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment." *Id.* at 993–94 (citing C. Kaufman, *Corbin on Contracts* § 19A, at 50 (Supp. 1989)). At this stage of the proceedings, the court is not persuaded that Plaintiffs' allegations or Rollins's admissions, *by themselves*, establish any of the three elements the Fourth Circuit has highlighted for permitting recovery on an unjust enrichment theory under ERISA. When the Fund wrongly mailed Rollins a check, it had no expectation of repayment; it only expected repayment once it learned of its own negligence. When Rollins received the check, the court must infer from her Answer (for purposes of the present motion) that she believed she was entitled to the money. Surely, at that point, she had no expectation that she would be required to repay money to which she thought she was entitled. And "in the circumstances of [this] case," as set out in the parties' pleadings, the court is not prepared to say that, as a matter of law, "society's reasonable expectations of person and property would be defeated by nonpayment."[3] *Id.* Accordingly, judgment on the Fund's unjust enrichment claim is not appropriate on the pleadings alone.

---

[3] The court is well aware of—and sympathetic to—the hardship Plaintiffs' mistake has on the members of the Fund whose money was paid out to someone who was not entitled to receive it. This ruling does not foreclose recovery of the funds from Rollins under either of Plaintiffs' theories; the court only holds that it is too early to tell if Rollins is required to repay the money.

## IV.   CONCLUSION

Because Plaintiffs have not established that Rollins has admitted the necessary facts to entitle it to recovery on either a breach of fiduciary claim or unjust enrichment claim under ERISA, and because its second cause of action is not a cause of action at all, judgment on the pleadings is not proper and Plaintiffs' motion for judgment on the pleadings will be denied.

The clerk is directed to forward a copy of this Order to the parties.

**ENTERED** this 28th day of September, 2021.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE